IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-03504-PAB-MJW

LUCYNDA MARTINEZ,

    Plaintiff,

v.

TCF NATIONAL BANK,

    Defendant.

_____

**ORDER**
_____

This matter comes before the Court on the Motion to Compel Arbitration and Stay Proceedings [Docket No. 29] filed by defendant TCF National Bank. Defendant argues that plaintiff Lucynda Martinez's claims for sexual harassment, sexual discrimination, national origin discrimination, and retaliation are subject to mandatory arbitration.

**I. BACKGROUND**

Plaintiff began working for defendant as a Banking Sales Representative on November 3, 2008. Docket No. 29-2 at 3, ¶ 3. Throughout her employment with defendant, plaintiff was an at-will employee. *Id.* On February 1, 2009, defendant implemented its Dispute Resolution Policy (the "DRP"). The DRP requires that employees arbitrate disputes that "relate to or arise from the employment relationship." Docket No. 29-1 at 3. The DRP further provides that "[b]y applying for, accepting or continuing employment with [defendant]" after the date the DRP went into effect, an

employee agreed "to resolve all Covered Claims . . . pursuant to this DRP." *Id.* at 2. *Id.* at 3, Covered Claims ¶ 5.

In December 2008, defendant posted a letter from its CEO on the company intranet. Docket No. 29-2 at 3-4, ¶ 6; Docket No. 29-3 at 2. The letter informed employees that, effective February 1, 2009, the DRP would be in effect, and that information about the DRP would be mailed directly to employees' home addresses. Docket No. 29-3 at 2.

In January 2009, defendant hired non-party Western Graphics to mail information regarding the DRP to all covered employees. Docket No. 29-2 at 4, ¶ 8, Docket No. 29-4 at 3, ¶ 4. Defendant provided a list of names and addresses of its employees, including plaintiff, to Western Graphics in an electronic file. *Id.* On January 19, 2009, Western Graphics mailed a packet of information, including the DRP, a question and answer document, and a cover letter to every addressee on the file provided by defendant. Docket No. 29-4 at 4, ¶ 7. The cover letter stated that "the DRP is a binding legal document which applies to both [the recipient] and [defendant]." Docket No. 39-1 at 6. On December 27, 2013, plaintiff filed the instant lawsuit. Docket No. 1.

## II. ANALYSIS

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has "long recognized and enforced a liberal federal policy favoring arbitration

agreements," and under this policy, doubts concerning the scope of arbitrable issues are resolved in favor of arbitration. *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)).  The FAA mandates a stay of a judicial proceeding "upon any issue referable to arbitration under an agreement in writing for such arbitration[.]"  9 U.S.C. § 3.

The decision whether to enforce an arbitration agreement requires a two-step inquiry: first, the Court must determine whether a valid agreement to arbitrate exists; and, second, the Court must determine whether the specific dispute falls within the scope of that agreement.  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *see also Pikes Peak Nephrology Assocs., P.C. v. Total Renal Care, Inc.*, No. 09-cv-00928-CMA-MEH, 2010 WL 1348326, at *5 (D. Colo. Mar. 30, 2010) (citation omitted).

The Court will first determine whether a valid agreement to arbitrate exists.  "The existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked."  *Avedon Engineering, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997).  Defendant, as the party claiming an obligation to arbitrate, has the burden of establishing that plaintiff's claims are subject to arbitration.  *See McCarthy v. Azure*, 22 F.3d 351, 354-55 (1st Cir. 1994).  If defendant meets its burden, the burden shifts to plaintiff to show that there is a "genuine issue of material fact as to the making of the agreement, using evidence comparable to that identified in Fed. R. Civ. P. 56."  *Stein v. Burt-Kuni One, LLC*, 396 F. Supp. 2d 1211, 1213 (D. Colo. 2005).

Defendant's DRP contains a broad arbitration clause that applies to all claims between an employee and defendant "that relate to or arise from the employment relationship." Docket No. 29-1 at 3. Plaintiff does not contest that her claims of sexual harassment, sex discrimination, national origin discrimination, and retaliation fall within the scope of this arbitration clause. Rather, plaintiff argues that the agreement to arbitrate is not valid. *See* Docket No. 33 at 3-5. Therefore, the only issue before the Court concerns the validity of the arbitration clause.

Plaintiff argues first that the arbitration agreement is not valid because plaintiff never received the DRP in the mail and never saw the notice placed on defendant's intranet. Docket No. 33 at 3. "When mail matter is properly addressed and deposited in the United States mails, with postage duly prepaid thereon, there is a rebuttable presumption of fact that it was received by the addressee in the ordinary course of mail." *Crude Oil Corp. v. Comm'r*, 161 F.2d 809, 810 (10th Cir. 1947); *see also Witt v. Roadway Express*, 136 F.3d 1424, 1429-30 (10th Cir. 1998) ("[a] rebuttable presumption of receipt does arise on evidence that a properly addressed piece of mail is placed in the care of the postal service") (citations omitted). Here, defendants have provided evidence that the DRP was mailed to plaintiff at her address of record on January 19, 2009, creating a presumption of delivery. *See* Docket No. 29-2 at 4-5, ¶¶ 8-11; Docket No. 29-4 at 3-4, ¶¶ 4-7; Docket No. 39-1 at 6.

To rebut the presumption of delivery, plaintiff attaches an email she sent to an attorney in which she claimed that she did not recall ever having seen the DRP. Docket No. 33-1 at 1. After plaintiff filed her response to defendant's motion, she submitted a supplemental affidavit saying that she "was never made aware" of the DRP while she

4

was employed with defendant, and that "[t]o the best of [plaintiff's] knowledge, [she] never received a copy of the DRP in the mail . . . and [she] never saw the DRP or any references to the DRP on [defendant's] intranet." Docket No. 37-1 at 1. The Court finds that plaintiff's assertion that she never received the DRP is insufficient to overcome the presumption of delivery. *United States v. Ekong*, 518 F.3d 285, 287 (5th Cir. 2007) (holding that "[t]he addressee's bare assertion of non-receipt is insufficient to rebut the [presumption]"); *see also McCarthy v. Option One Mortg. Corp.*, 362 F.3d 1008, 1012 (7th Cir. 2004) (rejecting that evidence of mailing "may be rebutted by a mere denial of receipt").

Plaintiff also argues that the presumption of delivery of the DRP should not apply because defendant's usual practice when it communicated its policies to employees was to require a signature from each employee acknowledging that the employee had received and reviewed the policy. Docket No. 33 at 4. In support, plaintiff attaches three verification statements signed by plaintiff that acknowledge, in turn, receipt and review of defendant's "Employee Policy Highlights brochure," its "Prohibited Conduct Policy," and its dress code policy. Docket No. 33-3 at 1-4. Even setting aside that plaintiff did not properly authenticate these documents,[1] the Court finds that they constitute insufficient evidence to rebut the presumption that plaintiff received the DRP. First, even if verification statements were defendant's customary practice, plaintiff cites no authority, and the Court is aware of none, that binds an employer to use a single

---

[1] Plaintiff attached the three acknowledgments as an exhibit to her response to defendant's motion. The exhibits were not accompanied by an affidavit based on personal knowledge.

form of notice when communicating new policies to employees or renders a different form of notice insufficient. Second, the Court notes that each signed policy acknowledgment is dated November 3, 2008, the day that plaintiff began working for defendant. Docket No. 6 at 2, ¶ 9; Docket No. 29-2 at 3, ¶ 3. Thus, while these documents may be evidence of how defendant communicated its policies to new hires at the time plaintiff began her employment, they are not evidence of a regular practice for communicating changes to those policies that would justify plaintiff's failure to take notice of a policy change communicated through direct mail. Finally, the verification statement signed by plaintiff acknowledging receipt of the "Employee Policy Highlights" brochure provided that plaintiff "understand[s] that any or all policy statements explained may be replaced or changed at any time" and that it was plaintiff's "responsibility to read" defendant's policies and "become familiar" with them. Docket No. 33-3 at 1.

Finally, plaintiff argues that cases in this district and others have required more robust means of ensuring that employees receive notice of an arbitration agreement than those employed by defendants here. Docket No. 33 at 4. In support, plaintiff cites *Urbanic v. Travelers Ins. Co.*, No. 10-cv-02368-WYD-MJW, 2011 WL 1743412 (D. Colo. May 6, 2011). In that case, the court rejected the claims of a plaintiff who said he never read an arbitration agreement where the evidence showed that he "was advised on six separate occasions" of the existence of the agreement. *Id.* at *8. Plaintiff also cites *Lynn v. General Electric Co.*, 2005 WL 701270 (D. Kan. Jan. 20, 2005), which held that an employer that distributed notice of an arbitration agreement by four different methods had not shown sufficient evidence that employees had actual

knowledge of the agreement.

The Court finds plaintiff's argument unconvincing. Since arbitration is a matter of contract, *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010), in deciding whether there is an enforceable agreement to arbitrate, "courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In Colorado, "[t]he formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 888 (Colo. 1986) (en banc) (citing Restatement (Second) of Contracts § 17(1) (1981)). In the employment context, an at-will employee who is offered a new condition of employment accepts that offer through continuing the employment relationship. *Lucht's Concrete Pumping, Inc. v. Horner*, 255 P.3d 1058, 1063 (Colo. 2011). Defendants sent plaintiff a copy of the DRP in the mail accompanied by a cover letter that informed plaintiff that the DRP was a "binding legal document." Docket No. 29-2 at 11. Defendants also posted the policy on the front page of the company intranet. Docket No. 29-2 at 5, ¶ 12.

Interpreting substantially similar New Mexico law on contract formation, the Tenth Circuit, in an unpublished opinion, has approved a finding that an employee was placed on notice of and accepted a company's arbitration agreement where notice of the agreement was provided via a single email and the employer introduced evidence that the employee habitually opened emails from management. *Pennington v. Northrop Grumman Space & Mission Sys. Corp.*, 269 F. App'x 812, 815 (10th Cir. 2008).

Defendant has presented evidence that it mailed a copy of the DRP to plaintiff's address of record, and that plaintiff has received mail from defendant at that address and opened it. Specifically, defendant attaches a copy of a check that had been cashed by plaintiff that was sent to the same address to which defendant mailed the DRP. Docket No. 38-2 at 5. The evidence before the Court shows that plaintiff "had reasonable notice and access to the terms and conditions of the arbitration clause." *Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1152 (D. Colo. 2012). Plaintiff's claim to the contrary, unsupported by any evidence other than her own declaration, is a mere "bare assertion of non-receipt." *Ekong*, 518 F.3d at 287. Under Colorado law, plaintiff "cannot avoid contractual obligations by claiming that . . . she did not read the agreement." *Loden v. Drake*, 881 P.2d 467, 469 (Colo. App. 1994). Because plaintiff had adequate notice of the agreement and the agreement covers the claims she asserts in this matter, the arbitration agreement is enforceable.

### III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant TCF National Bank's Motion to Compel Arbitration and Stay Proceedings [Docket No. 29] is **GRANTED**. It is further

**ORDERED** that, pursuant to D.C.COLO.LCivR 41.2, this action shall be administratively closed. It is further

**ORDERED** that, no later than twenty days after the completion of the arbitration proceeding, the parties shall file a status report advising the Court whether they believe the case should be reopened for good cause for any further proceedings in this Court or

whether the case may be dismissed.

DATED February 25, 2015.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge